917 F.Supp. 685 (1996)
Ricky W. GILMORE, et al., Plaintiffs,
v.
SILGAN PLASTICS CORPORATION, Defendant.
No. 4:94CV20 CDP.
United States District Court, E.D. Missouri, Eastern Division.
March 13, 1996.
Brian A. McKinsey, Partner, McKinsey and Glover, St. Louis, MO, for plaintiffs.
Daniel R. Begian, Partner, Thomas O. McCarthy, Partner, McMahon and Berger, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
Plaintiffs, thirteen former employees of defendant, originally filed this action as a single-count breach of contract petition in the *686 Circuit Court of the County of St. Louis, State of Missouri, on November 20, 1993. Defendant Silgan Plastics Corporation removed the action to this Court on January 7, 1994, alleging that plaintiffs' claims were governed by ERISA. Following removal, plaintiffs filed an amended complaint in which they alleged that defendant refused to follow its severance plan, suspended its severance plan without notice and wrongfully refused to pay benefits to plaintiffs, all in violation of ERISA. Defendant then filed a motion for summary judgment, arguing that defendant did not violate ERISA in administering its severance benefits plan.
After defendant filed its motion for summary judgment, the Court noted that it possibly lacked subject-matter jurisdiction. By order dated October 20, 1995, the Court invited the parties to file briefs regarding the existence of a "welfare benefit plan" under ERISA. Absent such plan, the Court noted that it lacks subject-matter jurisdiction, and remand or dismissal would be appropriate. Both parties have submitted briefs in support of their subject-matter jurisdiction arguments. Defendant contends that this case involves a "welfare benefit plan" as defined by ERISA, and that this Court has subject-matter jurisdiction. In the alternative, defendant argues that if the Court finds that the severance plan is not governed by ERISA, the Court should dismiss rather than remand the case. Plaintiffs argue that the severance benefits offered by defendant do not constitute a "welfare benefit plan" under ERISA, and suggest that the case should be remanded to state court.

I. FACTS
Each of the thirteen plaintiffs worked at defendant's West Port plant in March 1993. At that time, defendant employed over 100 people at the West Port plant. On March 5, 1993, defendant announced that it would be closing its West Port plant, and that all employees at that plant would gradually be subject to permanent layoff. The main reason for the plant closing was the loss of a major customer. On March 9 and 10, 1993, defendant's management representatives  Jim Burns, Plant Manager, and Jim Spinks, Director of Human Resources  held question and answer meetings with the employees to address the logistics of the plant closing and the impending layoffs. Following the meeting, defendant posted an eleven-page list of the questions and answers for the employees' review.
At the March 9 and 10 meetings, defendant stated that it would provide severance payments to employees to aid in the dislocation caused by the plant closing. Prior to this date, defendant did not have any written or unwritten severance plan. Severance would be granted to resigning employees if three criteria were satisfied: (1) the employee provided 14-day notice of his or her resignation, (2) the employee was an active employee on the payroll at the time of resignation and (3) the employee received "mutual agreement" from Plant Manager Burns. "Mutual agreement" was not really "mutual." Rather, Burns decided, based on the needs of the company whether an employee should be induced to resign. Defendant continued to fill some customer orders after the announcement of the plant closing, and Burns' decisions regarding mutual agreement were made depending on the company needs to fill the remaining orders. Employees who were granted mutual agreement, i.e., severance pay, received a lump sum equal to one forty-hour week of work for each year of service, up to ten weeks. The rate of pay was based on the employee's wage rate as of March 13, 1993. On March 18, 1993, defendant posted a plant notice that reinforced the policy: "Remember, with mutual concent [sic] from Jim Burns, you are entitled to all extended benefits." The employees generally understood that the "extended benefits" included severance pay.
On March 30, 1993, Burns issued a memorandum to all employees classified as mechanics, changing the previously-announced position. The memorandum stated that, effective immediately, Burns could not reach mutual agreement with any mechanics. This freeze on mutual agreement was made because "plenty of work" existed for mechanics. Burns issued a similar memorandum on March 31, 1993, stating that he could not reach mutual agreement with any employees *687 except for those classified as finishers. Both memoranda stated that, essentially, any covered employee who resigned would not be eligible for severance pay. On April 2, 1993, again by memorandum from Burns, defendant announced that there was a freeze on all mutual agreement as of noon on that day. The memorandum stated that "once downsizing begins we will again look at our overall needs and requirements and evaluate whether the `Mutual Agreement' practice should be reinstated."
The thirteen plaintiffs each notified defendant of their intention to resign after the mutual agreement freezes governing their respective employment classifications that took place between March 31 and April 2, 1993. Therefore, defendant denied severance benefits to each of them because they did not have the mutual agreement of Burns. In addition, defendant argues that plaintiffs Schmidt, Underwood and Ezell would not have been eligible regardless of the mutual agreement freeze because they each abandoned their jobs when they returned late from lunch and then announced to their supervisor that they quit.

II. DISCUSSION
Subject-matter jurisdiction, which is predicated in this case on ERISA, is a prerequisite to the Court's hearing the merits of this case. Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir.1994), aff'd on appeal after remand, No. 94-2829, 1995 WL 413319 (8th Cir. July 14, 1995). ERISA distinguishes between employee benefits and employee benefit plans; ERISA governs only benefit plans. Therefore, the Court ordered the parties to brief the issue of whether the severance benefits at issue in this case constitute a "welfare benefit plan" under ERISA rather than simply employee benefits. If there is no plan, ERISA does not control and this Court does not have jurisdiction. Id.
ERISA itself does not offer an instructive definition of "plan." See 29 U.S.C. § 1002(1) (defining an employee "welfare benefit plan" as "any plan, program or fund" established or maintained by an employer that provides certain benefits to employees). The Supreme Court, in Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), addressed the issue of whether employee benefits constitute a plan under ERISA. Fort Halifax held that a Maine state statute requiring certain employers to provide severance pay to employees terminated due to a plant closing did not constitute an ERISA plan. Id. at 6, 107 S.Ct. at 2215. The Court relied heavily on the purposes behind ERISA. ERISA provides a "uniform administrative scheme" that protects employers from conflicting state and local regulation regarding benefit plans. The uniform regulation provided by ERISA in turn encourages employers to provide benefits to employees: "A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." Id. at 11, 107 S.Ct. at 2217. These policy concerns only arise "with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." Id.
The Eighth Circuit, relying on Fort Halifax, adopted the following standard regarding the existence of an ERISA plan:
The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.
Kulinski, 21 F.3d at 257. Several courts have applied this standard to severance and similar benefits, and their conclusions necessarily differ based on the specific facts of each case. Compare Belanger v. Wyman-Gordon Co., 71 F.3d 451 (1st Cir.1995) (no ERISA "plan"); Delaye v. Agripac, Inc., 39 F.3d 235 (9th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1402, 131 L.Ed.2d 289 (1995); Sherrod v. General Motors Corp., 33 F.3d *688 636 (6th Cir.1994); Angst v. Mack Trucks, Inc., 969 F.2d 1530 (3d Cir.1992); Fontenot v. NL Indus., Inc., 953 F.2d 960 (5th Cir. 1992); Fludgate v. Management Technologies, Inc., 885 F.Supp. 645 (S.D.N.Y.1995); Tischmann v. ITT/Sheraton Corp., 882 F.Supp. 1358 (S.D.N.Y.1995), with Swinney v. General Motors Corp., 46 F.3d 512 (6th Cir.1995) (ERISA "plan" existed); Simas v. Quaker Fabric Corp., 6 F.3d 849 (1st Cir. 1993); Bogue v. Ampex Corp., 976 F.2d 1319 (9th Cir.1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993); Pane v. RCA Corp., 868 F.2d 631 (3d Cir.1989); Gruenke v. Miles, Inc., Welfare Plan, 872 F.Supp. 652 (D.Minn.1995); Macomber v. Digital Equip. Corp., 865 F.Supp. 65 (D.N.H. 1992).
The factors considered by the foregoing courts in determining the existence of an "ongoing administrative scheme" include: (1) whether the payments are one-time, lump sum payments or continuous, periodic payments, (2) whether the employer is obligated over a prolonged or a limited time period, (3) whether the severance payments are triggered by a single event, such as a plant closing, or rather are continuous payments to be made generally to terminated employees, and (4) whether the severance "plan" requires the employer to engage in a case-by-case review of employees to determine their particular eligibility based on the applicable criteria. The last factor is frequently determinative.
The severance benefits offered by defendant in this case are not distinguishable from Fort Halifax with respect to the first three factors. Both the statute in Fort Halifax and the benefits contemplated by defendant involved short-term benefits created solely to deal with a single event, i.e., the plant closing, and consisted of one-time, lump sum payments to eligible employees that did not create periodic demands on the employer's assets.[1] The factor that is distinguishable from Fort Halifax and warrants further discussion is the fourth of the factors listed above: the degree of employer discretion in awarding or denying benefits to individual employees.
Under the statute at issue in Fort Halifax, employers did not have discretion with respect to employee eligibility. The statute contained exceptions to severance pay liability: employers did not owe severance pay to employees who worked for the employer for less than three years, employees covered by express contracts, and employees who accepted employment at a new location. Fort Halifax, 482 U.S. at 4 n. 1, 107 S.Ct. at 2213 n. 1. However, those exceptions involved only mechanical determinations that did not require the establishment of an administrative scheme. Most courts concluding that severance and similar benefits constitute an ERISA plan have done so because of the employer's discretion in determining eligibility requires an administrative scheme. See, e.g., Swinney, 46 F.3d at 517 (determining eligibility for layoff benefits required individualized decisionmaking regarding, among other factors, state unemployment eligibility and the amount of money in the SUB fund); Simas, 6 F.3d at 853 (statute governing severance required individualized determination regarding state unemployment eligibility, including whether termination was for cause); Bogue, 976 F.2d at 1322 (employer obligated to determine whether employee's job with successor employer was "substantially equivalent" to pre-acquisition position).
Defendant argues that Burns, the plant manager, had sole authority to grant "mutual agreement." Therefore, he decided who was eligible for benefits based on the employee's job classification and the company's work force needs in light of the company's attempt to continue filling customer orders while it gradually closed its West Port plant. Defendant suggests that this is precisely the type of discretion that requires an ongoing administrative plan, and that distinguishes this *689 case from Fort Halifax and other cases that involve merely mechanical determinations.
The Court finds that Burns' discretion regarding which employees would receive severance pay does not render defendant's severance policy an ERISA plan. This is not a case where the employer obligated itself to provide severance pay to all employees who met X, Y and Z criteria. Although defendant has phrased its "severance policy" in terms of eligibility criteria, defendant essentially used severance benefits selectively to entice certain employees to resign on the company's terms so that the company could fill its production needs. Employees could only receive severance if Burns said they could, i.e., "mutual agreement." In other words, the discretion involved in defendant's severance "policy" was in deciding whether to offer severance benefits at all, rather than in deciding which employees would be eligible for the severance benefits. Once Burns decided it was in company's best interest to encourage the resignation of a particular employee, the payment of severance was mechanical, and no ongoing administrative scheme was implemented. This discretion by the company regarding whether to offer severance to an employee did not render the severance benefits an ERISA plan.
A case cited by the Court in Fort Halifax supports this Court's conclusion. In the context of noting that "[t]o do little more than write a check hardly constitutes the operation of a benefit plan," the Court cited Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir.1982), for the proposition that a "decision to extend benefits is not the establishment of a plan or program." Fort Halifax, 482 U.S. at 12 n. 6, 107 S.Ct. at 2218 n. 6. The relevant part of the Donovan decision reads:
The Secretary contends that "establish" means no more than an ultimate decision by an employer or an employee organization to provide the type of benefits described in [the "welfare benefit plan" provision of] ERISA ... This sweeps too broadly. A decision to extend benefits is not the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become a reality ... but it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative.
Donovan, 688 F.2d at 1372-73 (citations omitted). Similarly, the Eighth Circuit in Kulinski stated: "An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan." Kulinski, 21 F.3d at 256. It is clear that employers have the discretion to decide whether they will offer severance benefits to employees. However, exercising that discretion and offering severance benefits to certain employees does not in itself create an ERISA plan.
The policy behind ERISA, as discussed in Fort Halifax, also supports this conclusion. Congress was concerned about the conflicting administrative obligations that employers would face absent uniform regulation. Defendant simply did not employ the type of administrative scheme that would be affected by varying regulations. Some employees were not offered severance; other employees were paid severance benefits based on the mechanical application of a formula. In sum, the only arguable "administration" required by defendant was in deciding who should receive severance benefits. This is a purely internal decision that would not be governed by any government regulations, and therefore is not the type of "administration" that requires uniform regulation. In addition, the case-by-case method by which severance benefits were offered negates the likelihood of an "ongoing" administrative scheme.
In light of the foregoing, the Court concludes that defendant's policy of offering some employees severance benefits depending on the company's production needs was not a "welfare benefit plan" under ERISA. Accordingly, absent the presence of an ERISA plan, this Court does not have subject-matter jurisdiction.
The question remains whether the complaint should be dismissed or remanded to state court. Plaintiffs' original state court petition alleged breach of contract. When defendant removed the case to this Court, plaintiffs amended their complaint and brought all of their claims under ERISA. *690 Because plaintiffs have no non-ERISA claims pending, there are technically no state-law claims for this Court to remand.
Dismissal of this claim for lack of subject matter jurisdiction under Rule 12(h)(3), however, does not appear in the interests of justice, since removal was improvidently granted. Although defendant argues that plaintiffs embraced federal jurisdiction by failing to seek remand initially and by amending their complaint to allege ERISA claims, lack of subject matter jurisdiction is not waivable. It is clear from the file that plaintiffs acted under the misapprehension that defendant's position was correct. Plaintiffs amended the complaint under the mistaken belief that removal was proper, and plaintiffs have stated that they wish to pursue the state-law contract claims they initially asserted in state court. The Court will therefore order the Amended Complaint filed on February 10, 1994 stricken, will order the original petition reinstated, and will remand the case to the state court from which it was removed.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's amended complaint filed on February 10, 1994 is stricken, and plaintiff's original petition in this case is reinstated.
IT IS FURTHER ORDERED that defendant's motion for summary judgment [# 19] is denied and defendant's motion in limine [# 26] is denied as moot.
IT IS FURTHER ORDERED that because this Court lacks subject-matter jurisdiction over this claim, the Clerk of Court shall remand this case to the Circuit Court for St. Louis County, Missouri, from which it was removed.
NOTES
[1] The fact that defendant's eligible employees were entitled to different amounts of benefits based on their years of service and rate of pay does not render defendant's severance benefits a "plan." The formula employed by defendants is the type of "mechanical determination" contemplated by the Court in Fort Halifax, 482 U.S. at 4 n. 1, 107 S.Ct. at 2213 n. 1 (the statute at issue provided that eligible employees receive severance pay "at the rate of one week's pay for each year of employment by the employee in that establishment.").