Thomas C. CHAMPAGNE,
et al., Plaintiffs,

v.

REVCO D.S., INC., et al., Defendants.

No. Civ.A. 97–037L.

United States District Court,
D. Rhode Island.

March 11, 1998.

Matthew J. Brier, Pawtucket, RI, John L. Wolfe, Akron, OH, for Plaintiffs.

William P. Robinson, III, Edwards & Angell, Providence, RI, Martin S. List, Duvin, Cahn & Hutton, Cleveland, OH, for Defendants.

*DECISION AND ORDER*

LAGUEUX, Chief Judge.

This matter is before the Court on the motion of plaintiffs, Thomas Champagne, a resident of Ohio, Mary Jo Zint, a resident of Rhode Island, and a number of unnamed class members ("plaintiffs"), to remand this action from the United States District Court for the District of Rhode Island to the Rhode Island Superior Court pursuant to 28 U.S.C. § 1447(c). The underlying law suit is a class action based on a contract dispute over the terms and conditions of severance plans, brought by plaintiffs against Revco D.S., Inc. ("Revco"), Revco Severance Plan for HSI Service Center Associates Who May Be Displaced (the "Revco Plan" or "Revco Policy"), Hook–SupeRx, Inc., ("Hook–SupeRx"), Hook–SupeRx, Inc. Management and Hourly Associate Severance Plan and Hook–SupeRx Associate Severance Plan (together "Hook–SupeRx Plans"), and HSX Acquisition Corp. ("HSX") (collectively the "defendants"). The suit was removed to this Court from the Rhode Island Superior Court by defendants on January 28, 1997.

## I. *Background*

On January 6, 1997, plaintiffs commenced this action in the Rhode Island Superior Court sitting in Providence County. A number of allegations in the complaint were based on 29 U.S.C. §§ 1001 et seq., known as the Employee Retirement Income Security Act ("ERISA"). Pursuant to 28 U.S.C. § 1441(a), defendants removed the action to this District Court because there were allegations of violations of ERISA in the Complaint. Plaintiffs then filed a motion to remand the case to Superior Court for lack of subject matter jurisdiction asserting that the Plans in question, in fact, do not qualify as ERISA "employee welfare benefit plans" within the meaning of 29 U.S.C. § 1002(1). Defendants counter that the Plans are ERISA plans, and thus present a federal question which gives this Court subject matter jurisdiction over the case. They, therefore, contend that the motion to remand should be denied.

After hearing oral arguments on the motion to remand, the Court took the matter under advisement. The issue is now in order for decision.

## II. *Discussion*

A United States District Court is authorized by Congress to exercise jurisdiction over any civil action removed to that court by a defendant, so long as the litigation falls within the court's original jurisdiction. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1447(c), the court must grant a motion to remand if it finds that it lacks subject matter jurisdiction over the suit or if removal was procedurally defective.[1] The court should resolve any doubt in favor of remand, as the removal statute is to be narrowly interpreted. *Lifetime Medical Nursing Services, Inc. v. New England Health Care Employees Welfare Fund,* 730 F.Supp. 1192, 1193–1194 (D.R.I., 1990).

One category of cases over which district courts have original jurisdiction is where a question of federal law is implicated. 28 U.S.C. § 1331. Therefore, in this case, if the Plans are, in reality, ERISA plans, this is a federal question case and remand would be improper.

### A. ERISA

ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of employee benefit funds and also to protect employers from a "patchwork" scheme of regulations regarding employee benefits. *See Belanger v. Wyman–Gordon Co.,* 71 F.3d 451 (1st Cir.1995). Such broad reaching goals are not only ambitious but difficult to implement through narrowly structured and defined legislation. Thus, the ERISA statute is fairly broad and its terms are defined ambiguously, if at all, leaving the task of providing a clearer interpretation of the statutory provisions to the courts.

ERISA governs two types of employee benefit programs. One type is an employee benefit pension plan, pursuant to 29 U.S.C. § 1002(2)(A), that type is not at issue in this case. The other type which is implicated in this case is an employee welfare benefit plan, which is addressed in 29 U.S.C. § 1002(1). The ERISA statute defines "employee welfare benefit plan" as follows:

The terms employee welfare benefit plan and welfare plan mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits apprenticeship or other training programs or day care centers, scholarship funds, or prepaid legal services.

§ 3(1) 29 U.S.C. § 1002(1). It is well established that severance plans can be considered ERISA plans if they meet the other criteria defined in the statute. *See Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

In *Fort Halifax v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court analyzed the ERISA statute and its underlying policies to determine whether a Maine state severance pay statute qualified as an ERISA plan. The Court acknowledged that one of the policy concerns of ERISA—providing a single set of regulations for employers—is really only implicated when the employer's obligation requires an ongoing administrative program. *Id.* 482 U.S. at 11. The main inquiry thus becomes whether the

---

1. 28 U.S.C. § 1447(c) provides:
A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgement it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with the case.

plan itself requires some sort of ongoing administrative process.

The *Fort Halifax* Court made the following observations about such administration:

> The requirement of a one-time, lump sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize.... To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits ...

482 U.S. at 12. The First Circuit later commented on the difficulty that exists in attempting to apply this definition—"[s]o long as *Fort Halifax* prescribes a definition based on the extent and complexity of administrative obligations, line drawing ... is necessary and close calls will approach the line from both sides." *Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849, 854 (1st Cir.1993). The *Simas* Court went on to address the *Fort Halifax* holding and its interpretation by lower courts in the following manner:

> Given the Supreme Court's reasoning in *Fort Halifax,* there is no way to be certain exactly where it would draw the line. What we do know is that our sister circuits have generally read *Fort Halifax* as emphasizing the mechanical, one-time nature of the severance payments, have applied the decision to protect schemes akin to the Maine statute, and have ceased to apply the decision where the state statute or employer promise involved ongoing obligations materially beyond those present in *Fort Halifax.* It is sometimes hard to generalize about the cases because of the

variety of variables in the different severance schemes ...

*Id.* at 853–854.

Again, the determination is fact intensive and the reasons for considering a severance policy to be an ERISA plan will vary based on the specific facts of each case. Additionally, "while a wide array of factors may be suggestive, typically no single act in itself necessarily constitutes the establishment of the plan, fund or program." *Belanger,* 71 F.3d at 455 (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)).

In *Gilmore v. Silgan Plastics Corp.,* 917 F.Supp. 685 (E.D.Mo.1996) the Court laid out four factors which are useful to consider when evaluating whether an employer severance policy can be deemed an ERISA plan:

> (1) whether the payments are one-time lump sum payments or continuous, periodic payments (2) whether the employer is obligated over a prolonged or a limited time period, (3) whether the severance payments are triggered by a single event, such as a plant closing, or rather are continuous payments to be made generally to terminated employees and (4) whether the severance plan requires the employer to engage in case by case review of employees to determine their particular eligibility based on the applicable criteria. The last factor is frequently determinative.

*Id.* at 688. It is important to keep in mind that these are merely factors to be considered, not necessary components. While all the aspects of the plan must be considered, emphasis is to be given to the degree of discretion possessed by the employer in deciding employee eligibility: "most courts concluding that severance benefits constitute an ERISA plan have done so because of the employer's discretion in determining eligibility requires an administrative scheme." *Id.*

This case is slightly complicated by the fact that the suit involves three separate plans: both Hook–SupeRx Plans and the Revco Plan. The material terms and conditions of the two Hook–SupeRx Plans are identical, therefore, for purposes of this discussion, they will be treated as one Plan. If either or both the Hook–SupeRx or Revco

Plans qualify as ERISA plans, a federal question is presented here and the Court has subject matter jurisdiction under 28 U.S.C. § 1331. Therefore, it is necessary to analyze each Plan separately to determine whether or not one or the other qualifies under ERISA, keeping in mind the advice from the First Circuit:

> In this cloudy corner of the law, each case must be appraised on its own facts. All that can be stated with assurance is that *Fort Halifax* controls. Thus, so long as a proffered benefit does not involve employer obligations materially beyond those reflected in *Fort Halifax*, the benefit will not amount to a plan under the ERISA statute.

*Belanger* 71 F.3d at 455.

### B. The Revco Plan

The Revco Plan in question was effectuated in order to help those employees who would be displaced by Revco's acquisition of HSI. The relevant provisions of the Plan provide for severance pay to be made in a lump sum according to a schedule based on years of employment, some continued benefit programs during the severance period, and an offer of outplacement services to assist those displace in obtaining employment. It also provides that "certain benefits thereafter may be extended through Cobra provisions, which the human resources department will explain to each affected associate." Finally, the Plan states that it will apply only to eligible associates. It does not apply to associates who resigned voluntarily or were terminated for cause, nor, as an inter-office communication indicates, will it apply to those employees who have "Protective Compensation Agreements."

Analyzing this Plan in light of the factors outlined in *Gilmore* and other case law, this Court concludes that the Revco Plan is an ERISA plan. At first glance, the Plan appears to be similar to the Maine statute involved in *Fort Halifax*, where the U.S. Supreme Court found that no ERISA plan existed. *Fort Halifax*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1. However, there are several differences between this Plan and the statute involved in *Fort Halifax*, and each of

the differences "increases the administrative burden imposed" by the Plan. *Simas*, 6 F.3d at 853.

The fact that the severance payment and the payment for accrued vacation and sick days is to be made in a lump sum weighs against finding an ERISA plan. *See Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 915 F.Supp. 486 (D.Mass.1996) (early retirement severance plan allowing for a one-time lump sum severance bonus was not an ERISA plan because it did not involve continuing administrative and financial obligations by the employer). Nonetheless, when the payments are in a lump sum that is only one of many factors to be considered and alone is not determinative.

The benefits under the Plan are not limited to the lump sum payment but include continuing medical and health benefits during the severance period and outplacement assistance. These additional benefits create a continuing obligation on the part of Revco during the severance period, which can last up to 20 weeks in some cases. Courts have differing views on whether continuing medical benefits should result in categorizing a plan as an ERISA plan. Many courts have held that continuing medical benefits do not implicate ERISA. *See e.g., McLemore v. U.S. Fidelity & Guar. Co.*, 829 F.Supp. 192 (S.D.Miss.1993) (ERISA not implicated by continuation of medical benefits because administration was done pursuant to already existing ERISA governed benefit plan, so no new administrative scheme was required); *Fontenot v. NL Industries, Inc.*, 953 F.2d 960 (5th Cir.1992) (severance plan that provided a three year continuation of certain benefits and outplacement services after a single one time event did not implicate ERISA); *Delaye v. Agripac Inc.*, 39 F.3d 235 (9th Cir.1994) (not an ERISA plan even though employees would get fixed monthly amount and continuing insurance benefits).

Other courts have found that continuing medical benefits can and do implicate ERISA. *See Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368 (7th Cir.1997) (ERISA implicated by plan because programs there required continuation of medical benefits with consequential monitoring of claims, among

other factors); *Shahid v. Ford Motor Co.*, 76 F.3d 1404 (6th Cir.1996) (voluntary termination plan called for continued medical coverage after termination which amounted to an ongoing scheme of administration for ERISA purposes).

The message to be gleamed from these decisions is not that medical benefits can or cannot be determinative in deciding whether a severance policy is an ERISA benefit plan, rather, it is that courts decide this issue by looking at the entire plan and its context rather than one isolated factor. The courts look to the obligations imposed on the employer due to the various benefits available under the particular plan rather than at the mere existence of benefits. In the instances where courts have failed to find an ERISA plan to exist despite the continuing medical payments, the decision did not turn on that factor alone but instead was dictated by a number of factors. As the First Circuit noted in *Belanger*, "the existence of a 'plan' turns on the nature and extent of the employer's benefit obligations ... There is no authoritative checklist that can be consulted to determine conclusively if an employer's obligations rise to the level of an ERISA plan." 71 F.3d at 454–455.

This Court, agrees with the 7th Circuit's decision in *Cvelbar*. Since the medical benefits, as well as the outplacement services in this case, require Revco to monitor medical insurance claims and the progress of its former employees in the outplacement program and comply over time with its financial obligations to them, an ERISA plan is indicated. *See Cvelbar*, 106 F.3d 1368. The medical and outplacement benefits in the Revco Plan, when considered with the rest of the Plan, clearly require ongoing obligations on the part of the employer.

The third factor in *Gilmore* is whether the severance benefits are triggered by a one time, single event. 917 F.Supp. at 688. As the *Simas* Court observed, the statute in *Fort Halifax* "starts and ends with a single, once and for all event, the plant closing." 6 F.3d at 853. The statute involved in *Simas* was to be effectuated by a seemingly single event, a corporate takeover. The Court, however, held that where an employee could be terminated within one of several alternative time periods surrounding a corporate takeover, the statute did not, for purposes of ERISA, start and end with a single event, rather it was to take place over an extended period of time. *Id.*

The Revco Plan, although limited to those employees impacted by the acquisition, is more like the statute in *Simas*. It is not a once and for all event as was true of the Maine statute in *Fort Halifax*. The Revco Plan provides that associates and/or departments impacted by the acquisition will be notified within six weeks of such a decision being made, suggesting that not all affected employees would be displaced simultaneously, as would be the case in a plant closing. The Plan does not simply require Revco to write a check to each employee on the date of a one time event, rather, Revco is obligated by the Plan for an undefined length of time, or until the last employee to be impacted by the acquisition receives his or her severance benefits. There is no indication in the record that this Plan was to come into effect only once, on the date, and only on the date that the acquisition formally occurred. Any suggestion that the company would be aware of the impact on all personnel due to the acquisition on one single date is contrary to reason and logic. Thus, the Revco Plan is more like the *Simas* plan, which was found to be an ERISA Plan, than the *Fort Halifax* statute and this aspect of the analysis weighs heavily toward considering the Plan to be an ERISA plan.

Finally, the factor most often deemed to be determinative is the degree to which the plan obligates the employer to engage in a case by case review of each employee. *Gilmore*, 917 F.Supp. at 688. Although "[s]imple or mechanical determinations do not necessarily require the establishment of ... an administrative scheme," *Cvelbar*, 106 F.3d at 1375, citing *Kulinski v. Medtronic Bio–Medicus, Inc.*, 21 F.3d 254, 257 (8th Cir.1994), managerial discretion often can be indicative of such a scheme. If the employer's obligations under the severance policy are complex enough to require an ongoing administrative program, there is support for the conclusion that the policy qualifies as an ERISA plan.

*Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72 (2nd Cir.1996) *cert. denied,* — U.S. ——, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996). The Court's inquiry thus becomes whether the degree of managerial discretion involved in the implementation of the Policy is sufficient to classify it as an ongoing obligation.

In *Gilmore,* once the manager agreed that it was in the "company's best interest to encourage the resignation of a particular employee, the payment of severance was mechanical" and there was no further inquiry made. 917 F.Supp. at 689. The *Gilmore* Court found on those facts that the manager's discretion "regarding which employees would receive severance pay [did] not render defendant's severance policy an ERISA plan." *Id.* The Court noted a distinction between situations where the employer's only decision is whether to offer severance benefits at all and where the employer has to determine if the employee in question meets specific criteria needed to qualify for severance benefits, the latter suggesting the existence of an ongoing scheme of administration. *Id.*

A policy which is to come into effect on the occurrence of a single, specified event is not likely to be considered an ongoing administrative scheme if the decision to offer general severance benefits is a one time occurrence and is not something that needs to be constantly evaluated for each employee. *See Fort Halifax,* 482 U.S. at 12 ("To the extent that the obligation [to pay severance benefits] arises, satisfaction of that duty involves only making a single set of payments ... and creates no need for an ongoing administrative program for processing claims and paying benefits"); and *Fontenot,* 953 F.2d at 963 (no administrative scheme because "those employees included in the plan were to receive benefits upon termination regardless of the reason for termination.").

At first glance, the Revco Plan appears to require little or no discretion on the part of management once the decision has been made to terminate an employee. Its benefits are limited, however, to "eligible" employees who are terminated as a result of the acquisition of HSI, and does not apply to employees who resign voluntarily or are terminated for cause. Additionally, the Revco Plan does not cover those employees with "Protective Compensation Agreements." That requires Revco to inquire into whether the employee in question is covered by such an agreement. Thus, in determining whether or not an employee is eligible for benefits under the Plan, Revco must make a determination as to whether the employee was an eligible employee under the Plan, was severed due to the acquisition, resigned voluntarily or was terminated for cause.

The Court in *Simas* was faced with a similar restriction and found that "the 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination." 6 F.3d at 853. In assessing whether the employer's discretion amounted to an ongoing administrative scheme, that Court made the following observation regarding the obligations imposed on the employer:

> The Employer would have to maintain records, apply the "for cause" criteria, and make payments or dispute the obligation. We think it evident that ongoing administrative obligations are imposed, of a kind and over a time period that go far enough beyond *Fort Halifax* to call the regime a "plan" within the meaning of ERISA.

*Id.*

This Court agrees with the proposition that in making a "for cause" determination, the employer may be required to engage in an inquiry that exceeds making simple or mechanical determinations. The reason for termination must be evaluated on a case by case basis, employee by employee. Additionally, the Plan provides no guidance as to the meaning of "eligible," apparently leaving this up to the discretion of Revco managers. This strongly suggests that the effectuation of the Revco Plan requires the employer to create an ongoing administrative scheme.

Analyzing the Revco Plan in light of the *Gilmore* factors, this Court concludes that the administration of that Plan is not a simple, one time, mechanical obligation on the part of Revco but instead requires the estab-

lishment of an ongoing administrative scheme. For this reason, and all those discussed above, this Court holds that the Revco Plan qualifies as an employee benefit welfare plan under ERISA, 29 U.S.C. § 1002(1). The Court need not inquire further into whether the Hook–SupeRx Plans are also ERISA plans, because at this stage in the proceedings the only determination that needs to be made is whether this Court may retain jurisdiction. As this case implicates ERISA by reason of the Revco Plan, a federal question is presented and this Court has jurisdiction over the matter pursuant to 28 U.S.C. 1331.

### III. *Conclusion*

For the foregoing reasons, plaintiffs' motion to remand is denied.

It is so Ordered.